**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**KENNETH LEE WEINBERG,**

      **Plaintiff,**

**vs.**                             **Case No. 4:09cv256-RS/WCS**

**SERGEANT LEE, et al.,**

      **Defendants.**

_____/

### REPORT AND RECOMMENDATION

Plaintiff initiated this civil rights action in July, 2009, doc. 1, and filed an amended complaint on October 2, 2009. Doc. 6. Service was directed, doc. 10, and the three named Defendants filed a motion for summary judgment at the conclusion of the discovery period. Doc. 26. Plaintiff was advised of his Rule 56 obligation in responding, doc. 28, and he has filed his response. Doc. 40.

Plaintiff had three named Defendants in the amended complaint and three John Doe Defendants. Doc. 6. Plaintiff was advised in the initial service order, doc. 7, that service could not be carried out on the three unknown John Doe Defendants. Doc. 7, p. 2. That order stated that Plaintiff could use discovery to determine the identities of the John Doe Defendants and after doing so, it was "Plaintiff's responsibility to advise the

Court that he has learned the identity of the . . . Defendants and request that service of process be carried out as to those Defendants as well." Doc. 7, p. 2. Plaintiff has never filed a motion stating he has learned the identities of those Defendants and requesting additional service on the John Doe Defendants. Plaintiff concedes that he still has not identified the John Doe Defendants. Doc. 40-1, p. 17. Therefore, the complaint against these Defendants should now be dismissed.

Additionally, although Plaintiff brought suit against the Defendants in both their official and individual capacities, Plaintiff now "concedes that he cannot maintain an official capacity claim against any of the named Defendants as a matter of law." Doc. 40-1, p. 2. Therefore, the claims proceed only against the Defendants in their individual capacities.

**Allegations of the amended complaint, doc. 6**

This case is against three persons employed at the Leon County Jail, two of whom are officers and one is the paralegal at the jail. Doc. 6, p. 2. Plaintiff entered the jail on July 8, 2005, and the events at issue took place between July, 2005, and Defendant 16, 2005. Doc. 6, pp. 7-16. Plaintiff was then transferred to begin serving his sentence with the Department of Corrections on January 10, 2006. *Id.*, at 15.

**Defenses in summary judgment, doc. 26**

Defendants assert that Plaintiff failed to exhaust administrative remedies prior to filing this case. Doc. 2, p. 1. They also contend that they took no actions that denied Plaintiff access to the courts or violated Plaintiff's rights, *Id.*, at 1-2, and argue Plaintiff did not suffer legal injury or prejudice. *Id.*, at 14. Defendants further raise the statute of

limitations as a defense and argue that all claims occurring before July 15, 2005, are barred. *Id.*, at 3.

**Legal standards governing a motion for summary judgment**

On a motion for summary judgment Defendants initially have the burden to demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986). If they do so, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of material fact for trial. *Id.* An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient. The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Hickson Corp., 357 F.3d at 1260, *quoting* Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986). All reasonable inferences must be resolved in the light most favorable to the nonmoving party, Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999), if there is a genuine dispute as to those facts. Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007), *cited in* Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Industrial Co.,

475 U.S. at 587 (internal quotation marks omitted), *quoted in* <u>Ricci v. DeStefano</u>, 129

S.Ct. at 2677.

**The relevant Rule 56(e) evidence**

### Defendants' evidence

Defendant Edward Lee is a law enforcement officer and corrections officer.  Doc.

26-1, p. 1 (Lee affidavit).  During 2005-2006, he was a "case management supervisor

over all of the housing units in the Leon County Jail."  *Id.*  Defendant Lee testifies in his

affidavit that he never had any "discussion of any nature with [Plaintiff] with respect to

photocopies he requested while he was housed in the Leon County Jail."  Doc. 26-1, p.

2; Doc. 26, p. 5.  Defendant Lee never received a grievance from Plaintiff concerning a

request for photocopies.  *Id.*  Defendant Lee never told Plaintiff that Defendant Moreno

advised that he was not legally required to provide the photocopies requested by

Plaintiff.  Doc. 26-1, p. 2.

Inmates who request photocopies are "required to pay a nominal fee for the

photocopies by deductions from their inmate account maintained in the Leon County

Jail."  Doc. 26-1, p. 2.  If an inmate does not have funds in his account, he "does not

pay a nominal fee or any fee for the cost of photocopying."  *Id.*  Inmates are not limited

in the number of photocopies they may receive after submitting a written request.  *Id.*

Inmates are advised about the grievance process in the Jail Inmate Handbook.

Doc. 26-1, p. 3.  All inmates receive the handbook when booked into the jail.  *Id.*  On

July 8, 2005, Plaintiff signed a statement that he received a copy of the handbook.  *Id.*;

*see also* doc. 26-1, p. 6.  The handbook directs that if an inmate has submitted a written

complaint, and feels that the complaint was not resolved, then the inmate may "file a

Formal Grievance" to the Jail Director.  Doc. 26-1, p. 5.  A copy of the original "Note from Prisoner Form" which describes the initial complaint must be attached.  *Id.*

The Jail maintains an inmate grievance tracking log.  Doc. 26-1, p. 3.  The log reveals that Plaintiff submitted no grievances "at any time he was housed in the Leon County Jail."  *Id.*

Defendant Luis Moreno is a certified paralegal who has worked for the past seven years as a paralegal in the Leon County Jail.  Doc. 26-4, p. 1 (Moreno affidavit). Since 2002, the "Jail has maintained a non-physical access office" instead of a law library.  *Id.*  Mr. Moreno's office has access to Westlaw so that he can provide legal research and copies of legal materials upon written request by an inmate.  *Id.*  "If an inmate provides a general request for research on a particular legal topic," Defendant Moreno will research that topic on Westlaw and provide the inmate with his search results.  *Id.*, at 2.  Alternatively, an inmate can request copies of particular statutes or case law, and Defendant Moreno provides "copies of the requested documents up to 50 pages per week."  *Id.*  Defendant Moreno does not provide legal advice to either inmates or jail employees, and he has no authority to do so.  *Id.*  Defendant Moreno recalls seeing Defendant Rogers making photocopies of documents for Plaintiff while he was housed in the Jail.  *Id.*  Defendant Moreno also recalls responding personally to Plaintiff's requests for legal materials "and providing him with copies of requested cases."  *Id.*  Attached to Defendant Moreno's affidavit were copies of Request Forms showing numerous requests by Plaintiff for various legal materials, and containing the date as to when the request was received and when the request was "filled."  Doc. 26-4, pp. 4-13.

Defendant Paxton Rogers is a corrections officer and certified law enforcement officer. Doc. 26-2, p. 1. Defendant Rogers "was the case manager" for Plaintiff's housing unit in 2005. *Id.* Part of his duties "was to make photocopies of legal documents for inmates upon written request." *Id.* Defendant Rogers recalls "on numerous occasions making copies of documents" for Plaintiff. *Id.*, at 1-2. At no time did Defendant Rogers deny "a written request for photocopies presented" to him by Plaintiff, or any other inmate. *Id.*, at 2. At no time did he ever tell Plaintiff "that Luis Moreno, the paralegal employed at the Leon County Jail, advised [him] that pursuant to case law [he] was not required to make photocopies for [Plaintiff] or any other inmate housed in the Leon County Jail." *Id.*

The procedures in place at the jail while Plaintiff was housed there in 2005 and 2006, required that after Defendant Rogers made photocopies for an inmate pursuant to a written request, he completed a form, "Administrative Fees for Requested Copies" which was then submitted to the commissary. *Id.*, at 2. Defendant Rogers attached copies of Plaintiff's photocopying requests, along with his responses, to his affidavit. Doc. 26-2, pp. 2-3, 5-19. The documents indicate Plaintiff's copying requests were "taken care of" and "done" and no request has any comment showing a request that was denied. *Id.*, at 5-19. Of note is that on one such form filled out by Plaintiff requesting copies be made for him, Plaintiff stated that his "recent motion for a new trial was denied because [Plaintiff] could not get copies of documents *made in time* to send them to the Court." Doc. 26-2, p. 10 (emphasis added).

When an inmate makes a written request for copies, the case manager completes an Administrative Fees For Requested Copies form. Doc. 26-3, pp. 1-2

(James Affidavit). The form is provided to the commissary, showing the number of copies made for the inmate. *Id.* Inmates with sufficient funds in their account will have money deducted for the photocopies made. *Id.*, at 2. If an inmate does not have funds with which to pay for photocopies received, no deduction is made from the account. *Id.* To eliminate unnecessary accumulation when no funds are available to deduct the fees, the forms are eventually discarded. *Id.*

### Plaintiff's evidence [1]

Plaintiff avers that, although he "did sign the document showing that he got an inmate handbook," he never received the handbook from the Leon County Jail. Doc. 40-1, p. 6. Plaintiff contends that he was processed into and out of the jail at least six times between October, 2004 and January, 2006, and "you sign for a handbook but they refuse to give you one to save money." *Id.*, at 15. Despite that fact, Plaintiff "concedes that there was an inmate handbook available in" his housing pod and he "reviewed the grievance procedures and used it to file his grievances to Sergeant Lee and Major Bennett." *Id.*, at 15.

Plaintiff states that "when Sergeant Lee and Leon County Jail realized that Plaintiff Weinberg was serious about his grievances and access to the courts, they disposed of the grievances to limit the paper trail and prevent Plaintiff from exhausting his administrative grievances and remedies requested." Doc. 40-1, p. 7. Plaintiff

---

[1] As Plaintiff was advised in the order directing his reply in opposition to the summary judgment motion, Plaintiff must come forward with evidence to support his claims and show a genuine dispute of material fact for trial. Plaintiff may not rest on the allegations in the amended complaint and, therefore, Plaintiff cannot adequately oppose summary judgment by merely pointing to statements made in the amended complaint. *See* doc. 40-1, pp. 13-14.

presents no evidence that he is competent to make that statement, and it is doubtful that he was present when the grievances were allegedly "disposed of." Plaintiff makes the conclusory statement that the "defendants began to cover for each other and there is no paper trail to support Plaintiff's exhaustion requirements." *Id.* Again, there is no eye or ear witness evidence from Plaintiff to support this statement. Plaintiff also stated in an affidavit that he submitted an informal grievance concerning the actions of the John Doe Defendants on July 19, 2005, to Defendant Lee who "did not respond to the informal grievance or return it." Doc. 40-11, p. 2. "On August 6, 2005, Plaintiff filed a formal grievance to Major Bennett, the Jail Administrator, he also failed to respond or return the formal grievance." *Id.* Plaintiff states he "filed an informal grievance on defendants Lee, Rogers and Moreno" on August 20, 2005, and Defendant Lee failed to respond to it." *Id.*, at 3. On September 5, 2005, Plaintiff filed a formal grievance to Major Bennett, the jail administrator, who also failed to respond or return the grievance." *Id.*, at 4. On December 18, 2005, Plaintiff "again filed an informal grievance on the three" named Defendants, directed to the attention of Defendant Lee. *Id.* Defendant Lee failed to respond, and on January 3, 2006, Plaintiff filed a formal grievance to the jail administrator who also failed to respond or return the grievance. *Id.* Plaintiff fails to come forward with copies of these grievances.

Plaintiff states in his declaration that he requested service copies "numerous times." Doc. 40-1, p. 4. Plaintiff states that Defendant "Rogers would call Plaintiff to the Unit and would deny the copy service." *Id.* The Defendant "would then write on the request taken care of." *Id.*

When Plaintiff was taken to court on August 11, 2005, Plaintiff states that he did not "have a file copy to argue what was in the motion" that Plaintiff wrote for a new trial. Doc. 40-1, p. 5. Plaintiff avers that "the Defendants again refused to make Plaintiff copies of his pleading for the sentencing hearing on December 16, 2005, [so] he filed a summary of the fraud on the court motion . . . ." *Id.*, at 6.[2] Plaintiff contends that his summary did not contain "exhibits to substantiate his alligations [sic] and the court denied the motion and stated it was not legally sufficient, that his cases were not on point." *Id.* Plaintiff states that his "sentencing counsel then agreed to make a copy of Plaintiff's motion for a new trial based on fraud on the court." *Id.*, at 6. Plaintiff also asserts he suffered prejudice because he could not provide copies[3] of his motion for new trial prior to the sentencing hearing and after the hearing was over and the notice of appeal filed, Plaintiff argues the court "no longer had jurisdiction to hear the motion." *Id.*

Plaintiff contends that Defendant Moreno told Plaintiff on August 1, 2005, that the Jail "did not have to supply indigent defendants with copy service." Doc. 40-1, p. 8.

---

[2] Plaintiff indicates he submitted his request for copies of his motion for a new trial on December 13, 2005, and the sentencing hearing was held on December 16, 2005. Doc. 40-8, pp. 15-16. Plaintiff states the motion for a new trial had "several hundred pages of exhibits" that Plaintiff believed would show prosecutorial misconduct. *Id.*, at 15.

[3] In his amended complaint, Plaintiff alleged that he filed the summary of his motion with the court, which the court reviewed and then "stated plaintiff's summary of his motion was not on point with case laws on fraud." Doc. 40-8, p. 16. The court denied Plaintiff's motion, which Plaintiff contends he "was prevented from filing." *Id.*, at 16. Plaintiff contends his exhibits would have proved fraud, had he not been prevented from filing them. *Id.* "Plaintiff's sentencing counsel then agreed to make plaintiff a copy of the motion and filed it in the record" which the court permitted and allowed Plaintiff's counsel, Gregory Cummings, to do. *Id.*

Plaintiff said that without copy service, he "would be denied access to the court, especially because of his *pro se* status of representing hisself [sic]."  Several days later, Plaintiff said that he was called to the office about his request for copy service and Defendant "Moreno had discussed this issue with [Defendant] Lee who denied the copy request based on Defendant Moreno's advice and erroneous interpretation of the law." *Id.*

Plaintiff contends that when he had his sentencing hearing on December 16, 2005, he "had not been provided the copies that Defendant Rogers and Lee say" were provided.  Doc. 40-2, p. 12; *citing to* Plaintiff's exhibit 24.  Plaintiff also points to several documents he submitted to the court for filing with language he wrote on the documents saying, "still no copies."  *Id.*, at 12, *citing to* Plaintiff's exhibits 17-19.

Plaintiff has testified that from October 29, 2004, through June 5, 2005, Plaintiff received photocopies unhindered, as he needed them.  Doc. 40-1, p. 2.  However, Plaintiff states that he was denied copying services after being returned to the Leon County Jail on July 8, 2005.  *Id.*  From that date through January 9, 2006, "Plaintiff was denied copy service."  *Id.*, at 2-3.  Plaintiff states that Defendant Rogers wrote on the copy requests "taken care of" when in fact he denied the request for copies.  *Id.*, at 3.  Plaintiff states that "[s]trangely there was a period of time that Plaintiff convinced Defendant Rogers to make him a few copies, but on most occasions he denied the photocopy request."  *Id.*, at 4.

Plaintiff contends Defendant Rogers made it appear Plaintiff's copies were provided, but "in fact he denied plaintiff copies."  Doc. 40-1, p. 9.  Plaintiff claims that he did not have a file copy for use in arguing his motion for a new trial.  *Id.*  He claims

prejudice in the motion hearing, August 11, 2005, and again at sentencing hearing, December 16, 2005.  Doc. 40-1, p. 10.

Plaintiff and Defendant Moreno provided copies of some of Plaintiff's requests for legal copies.  Where Plaintiff requested copies of case law from Defendant Moreno, the paralegal, the copy request form indicates the number of copies.  For example, Plaintiff's request submitted on August 5, 2005, was "filled" on August 12, 2005, and indicates "19" copies.  Doc. 40-36, p. 6.  Two requests were submitted on September 6, 2005, and were "filled" on September 16, 2005, and one form reflects "12" copies, doc. 40-36, p. 8, and the other form reflects "20" copies.  On each of these forms, Plaintiff's signature is there to attest that he received the copies.  Plaintiff did not sign the form indicating receipt as to the September 18, 2005, request, which was "filled" with "23" copies, doc. 40-36, p. 12, or on September 26, 2005, which was filled with 29 copies. doc. 40-36, p. 16, an October , 2005, request filled with 43 copies, *Id.*, at 18,[4] and a January 5, 2006, request which indicates 52 pages were filled, and there is a notation for Plaintiff to resubmit next week, apparently because the request exceeded the 50-page limit.  Doc. 40-36, p. 24.[5]

Plaintiff avers that Defendant Moreno and Plaintiff did have a discussion about denying Plaintiff photocopying services.  Doc. 40-5, p. 7.  Plaintiff reports that Defendant Moreno told Plaintiff that new caselaw after the <u>Bounds</u> decision meant the Jail "no

---

[4] This page indicates Plaintiff may have signed for receipt, but in the wrong place. Doc. 40-36, p. 18.

[5] It is not necessary to go through every request form.  Doc. 40-36.  Each form contains a number representing the pages submitted to Plaintiff, and most of the forms contain Plaintiff's signature acknowledging receipt.  There are only a few exceptions which are noted above.

longer had to furnish copy service to indigent defendants." *Id.*, at 7. Plaintiff reports

that "Defendant Moreno denied Plaintiff's oral request [for copying services] in K pod on

or about August 1, 2005." *Id.*

As additional evidence, Plaintiff submitted a copy of the motion he submitted to

the state trial court, dated by Plaintiff on July 18, 2005, in which he states he was not

competent to proceed in this defense, and requests the appointment of Gregory

Cummings to represent Plaintiff "in his efforts to have the Court grant a new trial." Doc.

40-27, pp. 2-3 (exhibit 20). Plaintiff submitted a transcript from his motion hearing

(motion for a new trial), held on August 11, 2005, in which Plaintiff stated on the record

that his amended motion for a new trial was late because he turned his "case file" over

to the sentencing attorney, who did not return "the stuff back to [Plaintiff] until this past

Saturday evening late." Doc. 40-30, p. 6. Plaintiff explained he did not have his files

and that was the "reason for this late motion." *Id.*, at 6-7. The transcript reveals that the

court granted the State's motion to strike Plaintiff's motion as unauthorized under the

Rules because it was not filed within ten days.[6] *Id.*, at 7; *see also* p. 14.

Plaintiff's sentencing hearing took place on December 16, 2005. Doc. 40-31, p. 2

(ex. 24). The record discloses that Plaintiff was represented by counsel at sentencing.

*Id.* At the beginning of the hearing, counsel brought up a matter for the court's

---

[6] Within the ten days, Plaintiff filed a motion for new trial and three amendments
to the motion. Doc. 40-30, p. 6. Plaintiff's motion for new trial was timely filed on July
11, 2005. Doc. 40-31, p. 4. Plaintiff then filed an amended motion on July 12th. *Id.*
Plaintiff filed an amended motion for new trial on July 18th, and then an amendment to
that motion on July 20th. *Id.* Then on August 29, 2005, Plaintiff filed an emergency
motion for a rehearing, which the court denied on August 30th because criminal rules do
not provide for a motion for rehearing of an order ruling on a motion for new trial. *Id.*, at
5.

consideration: Plaintiff's attachments to a *pro se* motion for rehearing that he filed a day or two before the hearing. *Id.*, at 3-4. The transcript from that hearing reveals that the sentencing judge stated that the court did not have jurisdiction to consider Plaintiff's motions and amended motions for a new trial, that Plaintiff had already been advised that jurisdiction existed only for sentencing, that counsel had been appointed to represent Plaintiff at sentencing, and that all of Plaintiff's attempted *pro se* filings with the clerk were invalid and a legal nullity. Doc. 40-31, pp. 5-6. The judge stated that the clerk had been directed to reject any further submissions for filings by Plaintiff acting *pro se*. *Id.*, at 6.

Notwithstanding, the Circuit Judge Sanders Sauls stated that on December 4, 2005, Plaintiff again attempted to submit to the clerk a letter requesting rehearing and suggesting there had been fraud on the court. *Id.*, at 6. Then, contrary to the court's order, on December 14th, the clerk filed a motion from Plaintiff acting *pro se*, a motion for rehearing on the motion for new trial, accusing the prosecutor of misconduct and committing fraud on the court. *Id.*, at 7. At the hearing, counsel wanted to submit on Plaintiff's behalf 700 pages of attachments to the motion. *Id.*, at 7-8. Once again, the court granted the State's motion to strike, but permitted the filing as a "proffer to a pleading," and then commented that Plaintiff's cases on fraud were not of the type present in his case, that the court had already ruled that the prosecutor had not committed fraud, and that Plaintiff's continued motions and arguments were successive and abusive. *Id.*, at 8-9. Plaintiff's counsel, Mr. Cummings, then stated that Plaintiff was unable to get a copy made at the Jail of the 700 pages of attachments, and requested that counsel be permitted to take the documents, make a copy for Plaintiff,

and return the original to the court for filing at the time he submitted a notice of appeal. *Id.*, at 9-11. The court agreed to permit counsel to do so on an *ad hoc* basis. *Id.*, at 10-11. Plaintiff requested to speak for himself as to his motion and recent filing, and the court made clear to Plaintiff that his motions had been heard, considered, and denied, and the court did not need to read 700 pages more of the same repetitive arguments. *Id.*, at 12.

**Analysis**

### Statute of Limitations

Plaintiff's initial complaint was physically filed in this Court on July 15, 2009. Doc. 1. He signed and dated the complaint on July 11, 2009, but completed the declaration stating he delivered the complaint to officials for mailing for him on July 13, 2009. Doc. 1, p. 15. Under the "mailbox" rule, the complaint is deemed filed when Plaintiff gave it to jail officials for mailing for him. Houston v. Lack, 487 U.S. 266, 275, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988); Garvey v. Vaughn, 993 F.2d 776, 783 (11th Cir. 1993); Adams v. United States, 173 F.3d 1339, 1341 (11th Cir. 1999). The relevant date is July 13th.

A federal § 1983 claim is governed by the forum state's residual personal injury statute of limitations. Burton v. City of Belle Glade, 178 F.3d 1175, 1188 (11th Cir. 1999), *citing* Owens v. Okure, 488 U.S. 235, 249-50, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); Wilson v. Garcia, 471 U.S. 261, 276, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). In Florida, "a plaintiff must commence a § 1983 claim . . . within four years of the allegedly unconstitutional or otherwise illegal act." Burton, 178 F.3d at 1188, *citing* Baker v. Gulf & Western Indus., Inc., 850 F.2d 1480, 1483 (11th Cir.1988). The issue is whether

Plaintiff's claims which preceded July 13, 2005, are barred by the statute of limitations and must be dismissed.

Plaintiff contends these claims are saved by the "continuing violation" doctrine. In Lovett v. Ray, 327 F.3d 1181 (11th Cir. 2003), the court considered Georgia's statute of limitations for personal injury actions in the context of a § 1983 action raising an *ex post facto* claim to the decision of the Georgia Board of Pardons and Parole.  The inmate argued that his claim was not time barred under the "continuing violation" doctrine.  *Id.*, at 1183.  " 'The critical distinction in the continuing violation analysis . . . is whether the plaintiff complains of the present consequence of a one time violation, which does not extend the limitations period, or the continuation of that violation into the present, which does.' "  Lovett, 327 F.3d at 1183, *quoting* Knight v. Columbus, Ga., 19 F.3d 579, 580-81 (11th Cir. 1994).  The court held in that context that the parole decision was a "one time act with continued consequences, and the limitations period [was] not extended."  Lovett, 327 F.3d at 1183.

The events alleged in the amended complaint here, doc. 6, were that on July 8, 2005, John Doe I refused to give Plaintiff all of his legal property, only providing him with "about half of his property."  *Id.*, at 9.  Then, the Defendant refused to give Plaintiff "a pencil, ink pen or his writing paper" because Plaintiff was going to be in confinement until Classification decided where Plaintiff should be housed.  *Id.*  Plaintiff states that he explained he needed the materials for a court deadline on July 11th, and pleaded with Defendant John Doe I to call the classification sergeant, but the Defendant refused saying Plaintiff would be in confinement "only a couple of days."  *Id.*  Plaintiff claims he was in confinement without penological justification "for approximately 7 days" and

without access to all his legal property, pens or pencils, writing paper, stamps, and envelopes. *Id.*, at 10. Plaintiff then alleged that he explained to the John Doe II officer that he needed pen, paper, legal materials, etc., for a court deadline of July 11, 2005, but this Defendant also refused Plaintiff's requests. *Id.* Plaintiff further contends that Defendant John Doe II "would not give plaintiff request and grievance forms or medical sick call forms." *Id.*, at 10. Several days later, a prisoner "trustee" provided Plaintiff with a pencil, "4 pieces of paper, along with two request forms." *Id.*, at 10. Without providing a specific date, Plaintiff also alleged John Doe II "refused to call classification and arrange for plaintiff to make legal copies before his deadline expired." *Id.*, at 11. Plaintiff was moved out of confinement and housed in K pod on or about July 15, 2005. *Id.*, at 10.

Plaintiff's claims that precede July 13, 2005, cannot be considered to be a "continuing violation" because the events concern alleged denial of property, pens, pencils, paper, and the like. That is a separate claim from the allegations against the other Defendants that they refused to provide copying services for Plaintiff. These are not continuing events. Moreover, these claims are against the two John Doe Defendants, neither of which has been served. Because those Defendants should be dismissed as addressed *infra*, and because Plaintiff's claims do not present a continuing violation, all claims prior to July 13, 2005, must be dismissed as barred by the statute of limitations.

### Exhaustion

Congress has mandated that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner

confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement of § 1997e(a) is mandatory. Alexander v. Hawk, 159 F.3d 1321, 1324-26 (11th Cir. 1998); *see also* Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (holding that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); Booth v. Churner, 531 U.S. 956, 121 S. Ct. 1819, 1821, 149 L. Ed. 2d 958 (2001). The Court may not consider the adequacy or futility of administrative remedies, but only the availability of such. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000), *citing* Alexander, 159 F.3d at 1323. "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." Jones v. Bock, 549 U.S. 199, 204-209, 127 S.Ct. 910, 914, 166 L.Ed.2d 798 (2007)[7].

Defendants "bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008), *relying on* Jones v. Bock, 549 U.S. 199, 127 S.Ct. at 910, 921, 166 L.Ed.2d 798 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); Dixon v. United States, 548 U.S. 1, 8, 126 S.Ct. 2437, 2443, 165 L.Ed.2d 299 (2006) (stating that, as a "general evidentiary rule," the burdens of

---

[7] The Court further rejected the view of the Sixth Circuit when it concluded that "nothing in the statute [§ 1997e(a)] imposes a 'name all defendants' requirement." Jones v. Bock, 549 U.S. at 217-219, 127 S.Ct. at 922-923 (concluding "that exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances.").

production and persuasion are given to the same party); Roberts v. Barreras, 484 F.3d 1236, 1240 (10th Cir. 2007) ("Jones does not spell out the proper burden of proof to use in evaluating exhaustion claims, but circuits that treated exhaustion as an affirmative defense prior to Jones have all put the burden of proof on defendants, to the extent that they addressed the issue.").

Factual disputes[8] concerning the exhaustion of administrative remedies may be decided by the court sitting as fact-finder, "so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1373-74, 1376. Here, Plaintiff has created a genuine dispute on the issue of exhaustion. Defendants have shown that not one grievances was submitted by Plaintiff during his detention at the jail. Doc. 26-1, p. 3. Plaintiff has disputed that evidence with his own affidavit and declaration stating that he in fact submitted grievances raising the issue of denial of copies. He has not supported this assertion with copies of those grievances. Since, however, the underlying claim involves alleged denial of copies, I will assume that Plaintiff exhausted administrative remedies by submitting a grievance or grievances.

### First Amendment claim

Plaintiff argues that the issue in not being provided copies "is not whether Plaintiffs case would have been reversed if the court heard Plaintiff's motion." Doc. 40-4, p. 8. "The court does not have to decide the merits of Plaintiff's pleadings." *Id.* "The court needs only to determine if the defendants prevented plaintiff from presenting and

---

[8] In Bryant, 530 F.3d at 1377, n.16, the court suggested that it is appropriate to make credibility findings on review of documentary evidence, at least in the absence of a timely request for an evidentiary hearing by a party.

arguing his meritoris [sic] pleading by denying Plaintiff photocopy service for his pleadings." *Id.*, at 8-9.

The First Amendment guarantees the right of access to the courts for the purpose of resolving disputes and seeking judicial remedies. *See* <u>Bounds v. Smith</u>, 430 U.S. 827, 97 S. Ct. 1491. 52 L. Ed. 2d 72 (1977) (reaffirming the long established principle that inmates have a fundamental constitutional right of meaningful access to the courts under the First Amendment), and cases cited therein. In other words, access to the court is for a purpose, not just for the sake of access in and of itself. Thus, an inmate must also show "actual injury." <u>Lewis v. Casey</u>, 518 U.S. 343, 116 S. Ct. 2174, 2180, 135 L. Ed. 2d 606 (1996).[9] Because an inmate's First Amendment right is not an "abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Id.*, at 351, 116 S.Ct. at 2180. Thus, a prisoner must show actual injury in that the conduct complained of must have frustrated or impeded the inmate's efforts to pursue a *nonfrivolous* legal claim, *Id.*, at 352-54, 116 S. Ct. at 2181, and the "legal claim must be an appeal from a conviction for which the inmate was incarcerated, a habeas petition, or a civil rights action." <u>Bass v.</u>

---

[9] The role of the courts is "to remedy past or imminent official interference with individual inmates' presentation of claims" and the role of government is "to manage prisons in such fashion that official interference with the presentation of claims will not occur." <u>Lewis</u>, 518 U.S. at 349, 116 S.Ct. at 2179. "But the distinction between the two roles would be obliterated if, to invoke intervention of the courts, no actual or imminent harm were needed, but merely the status of being subject to a governmental institution that was not organized or managed properly." *Id.*, at 350, 116 S.Ct. at 2179.

Singletary, 143 F.3d 1442, 1445 (11th Cir. 1998), *citing* Lewis, 518 U.S. at 352-57, 116

S. Ct. at 2181-82.[10]

Following the guidance of Lewis, it has been shown that Plaintiff sought access

to the state court to attack his sentence and conviction, thus establishing the first

element of this claim. However, Plaintiff has not shown the second element, that the

claim to which he was impeded was not frivolous, or the third element, that the

Defendant's conduct complained of in this case must have impeded the inmate's

capability to file the nonfrivolous action challenging his sentence or conviction.

*Id.* at 2181-2183.

Plaintiff has not proved that he had a non-frivolous claim to present that was not

presented to the state court due to a lack of copies. Plaintiff has shown from the

transcript from the state court proceedings that he *was* able to present his motion for a

new trial. It was denied. Plaintiff was able to supplement that motion three times.

Plaintiff's successive effort at filing another motion for new trial was denied on timeliness

grounds. Even if Plaintiff had been provided copying services, the motion was not

denied because Plaintiff did not provide copies to the prosecutor or have a copy for

himself. The motion for new trial was denied on the merits, and his successive motion

was denied on timeliness grounds. The transcript made clear that Plaintiff was simply

rehashing the same arguments he had already presented, which were not meritorious.

In summary, he presented his motion. Further, he has not shown that he had other

non-frivolous arguments to make that were impeded by a lack of copies. Plaintiff has

---

[10] Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration. Lewis, 116 S. Ct. at 2182.

only argued the standard for determining a motion for a new trial, doc. 40-1, p. 10,

without showing any of the non-frivolous specifics that were precluded by lack of copies.

*Id.*

Plaintiff's second efforts at motions for rehearing were equally frivolous and

without merit.  The state court did not have jurisdiction to hear those motions, and the

rules did not permit filing the motions.  The lack of copying services caused no harm to

Plaintiff.

Furthermore, Plaintiff was represented by counsel at sentencing.  Plaintiff's

efforts to submit his own motions and arguments *pro se* were not only meaningless and

a legal nullity, but did nothing to help his cause.  The transcript of that hearing revealed

the successive nature of Plaintiff's abusive filings, Plaintiff's unwillingness to heed the

court's instructions not to continue filing successive and *pro se* documents, and the lack

of merit of the filings presented.  Having already been advised that the court ruled

against Plaintiff (as a state criminal defendant), that the court found no misconduct by

the prosecutor, Plaintiff's continued filings on that matter were abusive.  There was no

need for copies, especially of a 700-page attachment to a motion that had no legal

effect.  Plaintiff has failed to prove that the 700 pages continued anything to support a

non-frivolous claim.

In summary, this is a frivolous case.  Plaintiff has produced a cloud of smoke

about the denial of copies, but that has not obscured the fact that he did not have a

viable motion for a new trial.  At no point, in the state court, or in this court, where

Plaintiff has had an abundance of time, has Plaintiff described the non-frivolous

arguments he might have made in the state court to secure a new trial.  Plaintiff's

behavior in state court and in this court has been the same, to obfuscate with a barrage of paper. This is abusive litigation. This case should count as a strike against Plaintiff.

Accordingly, it is **RECOMMENDED** that Defendants' motion for summary judgment, doc. 26, be **GRANTED**, and that the court **DIRECT** the Clerk to enter judgment in favor of all Defendants and note that pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), the court found this case was frivolous.

**IN CHAMBERS** at Tallahassee, Florida, on February 11, 2011.


  s/      William C. Sherrill, Jr.      
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**